IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KAREN C. McGAGH,     *

    Plaintiff,     *

v.     *     Civil Action No. 8:19-cv-01185-PX

EQUIFIRST CORPORATION, *et al.*,     *

    Defendants.     *

    ***

## MEMORANDUM OPINION

Pending before the Court is Defendants Equifirst Corporation's ("Equifirst") and SN Servicing Corporation's ("SNSC") motion to dismiss. ECF No. 7. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, the Court grants Defendants' motion.

### I.     Background

On June 8, 2007, Plaintiff Karen McGagh purchased the real property located at 7116 Wardman Road, Baltimore Maryland 21212 ("Wardman Road Property"), with a $340,000 secured loan from Equifirst that encumbers the Wardman Road Property. ECF No. 7-3;[1] ECF No. 1 ¶ 1. In connection with this secured loan, McGagh executed a Deed of Trust, filed in the Baltimore County land records. ECF No. 7-3. In 2016, McGagh missed mortgage payments, and as of September 2, 2016 was considered in default on the loan. ECF No. 7-2.

---

[1] In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure12(b)(6), the well-pleaded allegations are accepted as true and viewed most favorably to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted). Accordingly, the Court considers the following documents, none of which McGagh challenges as inauthentic: ECF No. 7-2 (March 4, 2019 Fair Debt Letter and Notice of Intent to Foreclose); ECF No. 7-3 (June 28, 2017 Deed of Trust); ECF No. 7-4 (March 10, 2019 letter of dispute); ECF No. 7-5 (April 2, 2019 Verification of Debt Letter).

In December 2017, Equifirst transferred the servicing rights of the loan to SNSC, a mortgage servicer. ECF No. 1 ¶ 6; ECF No. 7-2. At some point prior to the transfer of the servicing rights, McGagh filed a property insurance claim for damage involving mold. *See* ECF No. ¶¶ 8–10. The insurance company allocated $17,000 for repairs, which were sent to SNSC rather than paid directly to McGagh. ECF No. 1 ¶¶ 7, 8, 13, 20. Despite McGagh's repeated requests to receive the check personally, ECF No. 1 ¶ 12, SNSC made clear that it would release the funds directly to a contractor who performed the necessary repairs to the property damage that was the subject of the insurance claim. ECF No. 1 ¶¶ 13, 20. The repairs never were performed. ECF No. 1 ¶¶ 9, 25.

After SNSC became the loan servicer, McGagh repeatedly asked SNSC for documentation related to her mortgage debt. ECF No. ¶¶ 17, 23, 24, 26. The Complaint does not provide any specifics as to the dates, times, or manner in which McGagh made such requests. It simply alleges that SNSC refused to provide documents or ignored McGagh. *Id.*

On March 4, 2019, BWW Law Group, which SNSC retained to foreclose on the Wardman Road Property, sent a "Fair Debt Letter and Notice of Intent to Foreclose" to McGagh. ECF No. 1 ¶ 27; ECF No. 7-2. Six days later, McGagh responded in writing. ECF No. 1 ¶ 27; ECF No. 7-4. McGagh enclosed a draft copy of her Complaint and noted that she had been asking SNSC "for the better part of two years" for "information about her loan." ECF No. 7-4. On April 2, 2019, BWW Law Group, on behalf of SNSC, replied to McGagh by sending a Verification of Debt Letter confirming that her loan was in default as of September 1, 2016, and advising her of the outstanding amount necessary to repay the loan in full. ECF No. 7-5.

On April 22, 2019, McGagh filed suit in this Court against Equifirst and SNSC, alleging violations of the Fair Debt Collection Practice Act (FDCPA), professional negligence, violations

2

of the Federal Trade Commission Act (FTC Act), unfair and deceptive business practices, intentional infliction of harm, and harassment. ECF No. 1. The Court addresses the sufficiency of each claim in turn.

**II.	Standard of Review**

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to her. *Twombly*, 550 U.S. at 555. The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak*, 780 F.3d at 606–07 (quoting *Trigon Healthcare*, 367 F.3d at 234) (internal quotation marks omitted). However, "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### III. Analysis

#### A. Fair Debt Collection Practices Act

McGagh asserts, in a conclusory fashion, that Defendants violated "the FDCPA." ECF No. 1 ¶ 33. To sustain a FDCPA claim, a plaintiff must aver some facts to support the inference that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt [ ] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012) (internal citations omitted) (quoting *Dikun v. Streich*, 369 F. Supp. 2d 781, 784–85 (E.D. Va. 2005). FDCPA claims are viewed from the perspective of the "least sophisticated debtor." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 408 (4th Cir. 1999).

The Complaint has satisfied the first two elements because a home mortgage is a consumer debt, *In re Evans*, 334 B.R. 148, 151 (Bankr. D. Md. 2004), and SNSC is a debt collector. *See Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 575 (W.D. Va. 2013). ("[M]ortgage servicers are considered debt collectors under the FDCPA if they became servicers after the debt they service fell into default."). At the time SNSC became the servicer on McGagh's loan, the loan was already in default. *See* ECF No. 1 ¶ 6; ECF No. 7-1 at 2; ECF No. 7-3. The Complaint, however, alleges no facts from which this Court could plausibly infer that Defendants' acts or omissions ran afoul of the FDCPA.

McGagh argues that SNSC failed to validate her debts, such that it violated 15 U.S.C. § 1692g of the FDCPA. "Section 1692g requires a debt collector to provide, in its initial communication with a consumer or within five days of that time, a debt validation notice informing the consumer of his or her right to dispute the validity of the debt." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir. 1996). If the consumer notifies the debt

collector in writing within the thirty-day period that the debt is disputed, the debt collector must cease collection of the debt until the debt collector obtains verification of the debt or a copy of a judgment. *See* 15 U.S.C. § 1692g.

The Complaint includes no facts by which the Court could infer SNSC failed to issue the proper communications, or that McGagh disputed a particular debt within the thirty-day window. Instead, the Complaint baldly asserts that non-descript communications went unanswered. *See, e.g.*, ECF No. 1 ¶ 28. The Complaint, simply put, avers no facts that allow this Court to infer SNSC violated § 1692g.

The only conceivable correspondence that may trigger a § 1692g violation concerns the foreclosure of the Wardman Road Property. However, the parties agree that McGagh received a Fair Debt Letter and Notice of Intent to Foreclose, that McGagh disputed the debt, and that she received, in response, a debt validation notice. ECF No. 1 ¶ 27; ECF Nos. 7-2, 7-4, 7-5. Thus, on these averred facts, SNSC did not violate § 1692g.

McGagh, however, seems to also contend that SNSC's withholding of insurance proceeds violates the FDCPA. Nothing in the FDCPA prohibits a mortgage lender or servicer, consistent with the terms in the Deed of Trust, from "hold[ing] such insurance proceeds until the Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction." ECF No. 7-3 § 5. Nor does McGagh provide any authority for how an FDCPA violation flows from SNSC's conduct in this respect. Because the Complaint, construed most favorably to McGagh, does not state a plausible FDCPA violation, this claim is dismissed.

### B. Professional Negligence

McGagh broadly asserts a claim for "professional negligence." ECF No. 1. Similar to any negligence claim, a plaintiff alleging "professional" negligence must aver facts from which

5

the Court could plausibly infer that defendant 1) owed a duty to the plaintiff 2) breached that duty, 3) which caused plaintiff harm, and 4) suffered damages. *See Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 266 Md. App. 420, 438 (Md. Ct. Spec. App. 2016), aff'd, 451 Md. 600 (2017).

"[W]hen analyzing a negligence action, it is customary to begin with whether a legally cognizable duty exists." *Premium of Am., LLC v. Sanchez*, 213 Md. App. 91, 108 (Md. Ct. Spec. App. 2013) (quoting *Pendleton v. State*, 382 Md. 447, 461 (2007)). McGagh's claim fails on this element alone. No facts support that Defendants owed her any "duty" of care necessary to sustain a negligence action. Although a duty of care sounding in tort may arise in a contract action, McGagh has not asserted any such duty owed under the terms of the contract, nor can the Court discern any from the averred facts and incorporated loan documents. *Yousef v. Trustbank Sav. F.S.B.*, 81 Md. App. 527, 536 (Md. Ct. Spec. App. 1990).[2]

Alternatively, even if Defendants somehow owed McGagh a duty of care, the Complaint fails to allege any facts supporting a breach of such duty. Simply failing to return phone calls or answer correspondence, absent any other factual context, is just not negligence.[3] Nor can a negligence action be supported by SNSC's retaining of insurance proceeds consistent with the terms of the Deed of Trust. ECF No 1 ¶¶ 12, 24, 26, 28; ECF No. 7-3 § 5. Because the Complaint alleges no facts to sustain the negligence claim, it must be dismissed.

---

[2] McGagh has also failed to allege a fiduciary duty. Notably, "[c]ourts have consistently held that banks and mortgage servicers do not owe customers a fiduciary duty." *Ayres v. Ocwen Loan Servicing*, LLC, No. WDQ-13-1597, 2014 WL 4269051, at *4 (D. Md. Aug. 27, 2014) (citations omitted). *McGagh* has not alleged facts that would demonstrate anything more than the existence of a routine lending relationship in the context of a home mortgage. *Cf. Windesheim v. Larocca*, 443 Md. 312, 338–39 (2015) (enumerating instances in which lending relationship gives rise to fiduciary duties).

[3] The Complaint, in fact, reflects that SNSC was not completely unresponsive. *See* ECF No. 1 ¶ 20 ("SNSC eventually agreed to pay a contractor[.]"), ¶ 21 ("SNSC emailed Ms. McGagh the typed document.), ¶ 27 ("SNSC continued to say if Ms. McGagh failed to pay these unknown fees, SNSC would begin foreclosure proceedings in June 2019.").

### C. Unfair and Deceptive Business Practices

#### 1. Federal Trade Commission Act

McGagh alleges that Defendants violated 15 U.S.C. § 45g of the FTC Act. Because the FTC Act does not include such a provision, the Court assumes that McGagh intended to aver that Defendants violated § 45(a). This section prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C § 45(a). However, this section does not allow a private cause of action. *See Michaud v. J.P. Morgan Chase Bank, N.A.*, No. WDQ-12-0815, 2012 WL 1454859, at *2 (D. Md. Apr. 25, 2012). Nor can the Court find any other provision under this Act that allows McGagh's FTC Act claim to proceed. This claim must be dismissed.

#### 2. Maryland Consumer Protection Act

Alternatively, the claim fails even when construed under Maryland's Consumer Protection Act, which does provide a private right of action for "unfair and deceptive practices," in connection with the collection of consumer debts. MD. CODE ANN., COM. LAW § 13–301. Unfair or deceptive trade practices are defined as any "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." COM. LAW § 13–301(1).

Although the Complaint broadly states that Defendants engaged in "deceptive" and "unfair" practices, no facts support this naked legal assertion. The Complaint does not identify a single statement that deceived or mislead McGagh. Because bare legal conclusions couched as factual assertions do not suffice, *Twombly*, 550 U.S. at 555, this claim too must be dismissed.

### D. Intentional Infliction of Harm

McGagh alleges a claim of "intentional infliction of harm" against Defendants. ECF No.

1. Maryland recognizes the tort of intentional infliction of emotion distress ("IIED"). *See Kentucky Fried Chicken Nat. Mgmt. Co. v. Weathersby*, 326 Md. 663, 669 (1992). To sustain such a claim, a plaintiff must demonstrate that defendants engaged in (1) intentional or reckless conduct that is (2) extreme and outrageous and which (3) caused severe emotional distress. *Manikhi v. Mass Transit Admin.,* 360 Md. 333, 367 (2000). Importantly, this tort "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Weathersby*, 326 Md. at 670. McGagh has alleged no facts to support this claim. Thus, it too is dismissed.

### E. Harassment

McGagh's claim of "harassment" likewise fails. Although Maryland has criminalized harassment, MD. CODE, CRIM. LAW § 3-803, no private civil cause of action exists for the same. *See Demo v. Kirksey*, No. 8:18-CV-00716-PX, 2018 WL 5994995, at *6–7 (D. Md. Nov. 15, 2018) (citing *Baker v. Montgomery Cty.*, 201 Md. App. 642, 670 (Md. Ct. Spec. App. 2011)) (emphasis added). This claim too must be dismissed.

## IV. Conclusion

At bottom, McGagh's claims stem from her deep dissatisfaction with not receiving insurance proceeds directly while her mortgage was in arrears. Although the Court empathizes with her predicament, it cannot allow legally unsupported claims to proceed. The Complaint is dismissed, and with prejudice, because the Court cannot conclude that McGagh could rectify the legal deficiencies through amendment of pleadings.

A separate order follows.

| 1/28/2020 | /S/ |
|---|---|
| Date | Paula Xinis |
|  | United States District Judge |